## NO. 2013-1561

_____

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____


SCRIPTPRO, LLC AND SCRIPTPRO USA, INC.,

*Plaintiffs-Appellants*,

v.

INNOVATION ASSOCIATES, INC.,

*Defendant-Appellee.*


Appeal from the United States District Court for the District of Kansas
in Case No. 06-cv-2468, Judge Carlos Murguia

_____

## PRINCIPAL BRIEF OF DEFENDANT-APPELLEE
## INNOVATION ASSOCIATES, INC.

_____

B. Trent Webb
Angel D. Mitchell
Christine A. Guastello
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Phone:  (816) 474-6550
Fax:  (816) 421-5547

*Attorneys for Defendant-Appellee
Innovation Associates, Inc.*

February 20, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellee Innovation Associates, Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

   Innovation Associates, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are as follows:

   B. Trent Webb, Angel D. Mitchell, Christine A. Guastello, and Brittany A. Boswell of Shook, Hardy & Bacon, LLP; Douglas M. Greenwald of McAnany, Van Cleave & Phillips, P.A.; Carlos Perez-Albuerne, Michael E. Murawski, E. Page Wilkins, Dana L. Popkave, and Kathleen B. Shields of Choate, Hall & Stewart LLP; and Mark Levy of Hinman Howard & Kattell, LLP.


February 20, 2014       _/s/ Angel D. Mitchell_____
Date                    Angel D. Mitchell

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF THE ISSUE................................................................. 1

STATEMENT OF THE CASE................................................................... 2

STATEMENT OF FACTS ........................................................................ 3

SUMMARY OF ARGUMENT ................................................................. 8

ARGUMENT ........................................................................................... 9

I.     The District Court Properly Granted Summary Judgment That the Asserted Sensorless Claims are Invalid for Lack of Written Description.................... 9

     A.     Standard of Review ............................................................. 9

     B.     Legal Standard for Lack of Written Description................................ 10

     C.     The Patent Claims, Which Do Not Require Sensors, are Broader Than the Supporting Disclosure, Which Unambiguously Limits the Invention to a Collating Unit with Sensors ........................................ 11

          1.     This Court has Repeatedly Upheld the Grant of Summary Judgment Where Broad Claims Lacked Elements of the Invention Described in the Specification ...................... 11

          2.     The Specification Unambiguously Limits the Broadest Form of the Invention to a Collating Unit With Sensors 13

II.     ScriptPro's "Original Claims" Argument is Procedurally Improper and Violates Binding Precedent ........................................................ 18

     A.     ScriptPro Waived Any "Original Claims" Argument By Not Presenting It To The District Court.................................... 18

     B.     Even If the Court Were to Consider ScriptPro's "Original Claims" Argument, It is Without Merit.............................. 19

III.    No Disputed Issues of Material Fact Preclude Summary Judgment ............ 22

      A.    The Passages Of The '601 Patent Cited By ScriptPro Do Not Suggest That Sensors Are Merely Optional .................................................... 22

      B.    Dr. Faddis's Opinions are Not Based on the Law and Contradict the Specification's Teachings ................................................................. 24

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .............................. 27

CERTIFICATE OF COMPLIANCE ...................................................................... 29

CERTIFICATE OF SERVICE ................................................................................ 30

# TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F.3d 1121 (Fed. Cir. 2011) ...................................................................14, 15

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ........................ 8, 9, 10, 11, 19, 21, 26

*Atl. Research Mktg. Sys. v. Troy*,
  659 F.3d 1345 (Fed. Cir. 2011) ...............................................................9, 10, 12

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
  541 F.3d 1115 (Fed. Cir. 2008) ....................................................................10, 12

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
  636 F.3d 1341 (Fed. Cir. 2011) ...........................................................................11

*CIAS, Inc. v. Alliance Gaming Corp.*,
  504 F.3d 1356 (Fed. Cir. 2007) ...........................................................................15

*Crown Packaging Technologies, Inc. v. Ball Metal Beverage Container
  Corp.*, 635 F.3d 1373 (Fed. Cir. 2011) .................................................8, 9, 20, 21

*Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*,
  497 F.3d 1135 (10th Cir. 2007) .....................................................................18, 19

*Gentry Gallery, Inc. v. Berkline Furniture Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998) .................................................................11, 12, 24

*Harrell v. United States*,
  443 F.3d 1231 (10th Cir. 2006) ...........................................................................19

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
  452 F.3d 1312 (Fed. Cir. 2006) ...........................................................................14

*Hyatt v. Dudas*,
  492 F.3d 1365 (Fed. Cir. 2007) ...........................................................................25

*ICU Medical, Inc. v. Alaris Medical Systems*,
  558 F.3d 1368 (Fed. Cir. 2009) .................................................................3, 12, 21

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ........................................................13

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) .......................................................10

*Maytag Corp. v. Electrolux Home Prods., Inc.*,
    448 F. Supp. 2d 1034 (N.D. Iowa 2006), *aff'd*, 224 Fed. Appx. 972
    (2007)..............................................................................................13

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008) .......................................................26

*Riverwood Int'l Corp. v. R. A. Jones & Co.*,
    324 F.3d 1346 (Fed. Cir. 2003) .......................................................18

*Trading Techs. Int'l, Inc., v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) .......................................................14

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
    822 F. Supp. 2d 1020 (N.D. Cal. 2011)............................................25

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004) .........................................................11

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) .......................................................14

*Wall v. Astrue*,
    561 F.3d 1048 (10th Cir. 2009) .......................................................18

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005) .......................................................25

## STATUTES

35 U.S.C. § 112 ...................................................................2, 10, 27

## OTHER AUTHORITIES

FED. R. CIV. P. 56(a)..........................................................................10

## STATEMENT OF RELATED CASES

Innovation Associates, Inc. ("Innovation") and its counsel are not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this or any other appellate court. Innovation and its counsel know of no case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUE

Whether the District Court properly granted summary judgment that the asserted claims of U.S. Patent No. 6,910,601 ("the '601 patent") lack written description support for broad claims directed to a collating unit that does not require sensors for automatically storing prescription containers but the specification unambiguously discloses that sensors are a necessary part of the invention that perform a critical and integral function in automating storage of prescription containers. In particular, (i) the Background of the Invention emphasizes the need to automate storage of filled prescription containers as quickly as an automatic dispensing system outputs them in order to ease pharmacy staff resources; (ii) the Abstract describes the claimed collating unit as comprising conveyors, guide arms, sensors, and a control system to control their operation; (iii) the Summary of the Invention describes "the present invention" as including

- 1 -

"a plurality of sensors" integrated with the control system via "sensor controllers" to determine how and where to store prescription containers; and (iv) the preferred embodiments describe in intricate detail the critical role that sensors play in automating storage of prescription containers.

## STATEMENT OF THE CASE

Appellants ScriptPro, LLC and ScriptPro USA, Inc. (collectively "ScriptPro") brought this lawsuit asserting that Innovation infringes the '601 patent entitled "Collating Unit for Use With a Control Center Cooperating With an Automatic Prescription or Pharmaceutical Dispensing System." (A2079.) ScriptPro asserts that Innovation infringes claims 1, 2, 4, and 8 of the '601 patent. (*Id.*) Each of these claims is broadly directed to a collating unit that does not require sensors for automatically storing prescription containers dispensed by an automatic dispensing system ("ADS"). (A86-A87, A90.)

The parties filed cross-motions for summary judgment on (among other things) Innovation's counterclaim that the asserted claims are invalid because the specification of the '601 patent does not provide written description support pursuant to 35 U.S.C. § 112, ¶ 1 for claims broadly directed to a collating unit that does not require sensors for automatically storing prescription containers. (A1800, A1809-A1817, A1839-A1845, A2153-A2154, A2159.) The district court

acknowledged that Innovation bears the burden of proving invalidity by clear and convincing evidence because the patent is presumed valid. (A12.) After thoroughly reviewing the record, the district court determined that no reasonable jury could find that the inventors were in possession of a collating unit that operated without sensors. (*Id.*) The district court therefore granted summary judgment of invalidity for lack of written description. (*Id.*)

## STATEMENT OF FACTS

Asserted claims 1, 2, 4, and 8 of the '601 patent broadly cover a collating unit for automatically storing prescription containers. (A86-A87, A90.) None include a limitation requiring sensors. (*Id.*) As such, they broadly cover a "sensorless"[1] collating unit that automatically stores prescription containers, unlike claims 7 and 9-11 that expressly require sensors. (*Id.*)

---

[1] Innovation uses the coined term "sensorless" here, much like the Federal Circuit used the term "spikeless" in *ICU Medical, Inc. v. Alaris Medical Systems*, 558 F.3d 1368 (Fed. Cir. 2009), discussed *supra*.

The Abstract discloses a collating unit for use with a control center cooperating with an ADS "for automatic storage of prescription containers dispensed from the ADS **(14)**." (A69, at Abstract.) Its components are illustrated in the diagram on the face of the patent, shown right. (A69.) The collating unit **(10)** "broadly comprises" conveyors **(16)** & **(18)**, guide arms **(24)** to maneuver the containers to holding areas **(22)** within a frame **(21)**, "a plurality of sensors **(26)** to sense the presence of the containers within the collating unit **(10)**; and a control system **(28)** for controlling operation of . . . the sensors **(26)**." (*Id.*)



The Background of the Invention describes "[t]he present invention" as a collating unit "operable to automatically store prescription containers dispensed from an automatic dispensing system for subsequent retrieval by an operator." (A79, at 1:15-23.) It explains that the prior art presented problems with pharmacy staff properly retrieving and storing containers as quickly as they exit the ADS so as to avoid medicament errors, disorganization, and a disruptive workflow around the ADS. (*Id.* at 1:31-2:11.) Busy pharmacies often do not have sufficient staff to properly handle containers as quickly as the ADS outputs them, and requiring

- 4 -

additional staff to handle this task increases the overall pharmacy operating costs. (*Id.*)  Consequently, "there is a need for a storage unit that automatically stores a prescription container containing medicaments and dispensed from an automatic dispensing system for subsequent retrieval by an operator," including grouping containers in holding areas.  (A80, at 3:59-4:1.)

The Summary of the Invention explains that "[t]he present invention solves the[se] problems and provides a distinct advance in the art" by providing a collating unit that automatically stores prescription containers exiting an ADS. (A80, at 4:13-24.)  The unit "broadly includes an infeed conveyor, a base, a collating unit conveyor, a frame, a plurality of holding areas, a plurality of guide arms, **a plurality of sensors**, and a control system."  (A80, at 4:25-28 (emphasis added).)  Storage of the containers is accomplished via "a storage algorithm that is dependent on a patient name . . . and an availability of an open storage position in the collating unit."  (A80, at 4:13-24.)  Sensors are the one and only structure identified as determining the availability of an open position (*id.* at 4:61-67), as required by the storage algorithm.  In determining whether to store a particular container in a given holding area, the control system relies on feedback from "the sensor positioned at the open end of the holding area [to] determine[] if the holding area is full."  (A81, at 5:45-59.)  The control system controls operation of the sensors via sensor controllers.  (*Id.* at 5:1-10, 5:22-27.)  The control system causes

- 5 -

a container to be stored in a given holding area by instructing guide arms positioned along the infeed conveyor to open and close based on "the sensor sensing the presence of the container." (*Id.* at 5:64-67.)

Consistent with "the present invention" described in the Summary of the Invention, the figures and Detailed Description of the Preferred Embodiments reinforce the critical role that sensors play in automating storage of the prescription containers. These components of the first preferred embodiment are depicted in



Figure 1, shown left. (A72.) The collating unit **10** broadly comprises conveyors **16 & 20**, a frame **21** with holding areas **22**, guide arms **24** operable to maneuver the containers from the conveyor into the holding areas, "a plurality of sensors **26** to sense the presence of the containers," and a control system for controlling operation of the conveyors, guide arms, and sensors. (A82, at 7:33-48.) The sensors are positioned along the slots and holding areas and are equipped with optical emitters and detectors such as infrared LEDs and receivers. (A83, A85, at 10:39-49, 13:29-40.)

The sensors "sense the presence or location of containers stored in the collating unit" and provide feedback to the control system. (A83-A85, at 10:23-39, 10:50-11:1, 11:34-42, 11:65-12:17, 12:28-35, 13:11-16, 14:33-36.) The exchange

of information between the
sensors and the control system is
accomplished through sensor
controllers, as depicted in Figure
6 shown to the right. (A76, A83-
84, at Fig. 6, 10:62-11:5.) Indeed,
the flow diagrams illustrating the



steps performed during the storage process largely involve determining whether

holding slots are empty or full, and whether containers have been removed. (A77,

A84-85, at Figs. 7 & 8, 11:65-12:6, 13:11-14, 13:30-34.)

The second preferred embodiment has multiple collating units, each of

which are "substantially similar to the collating unit **10** of the first preferred

embodiment." (A85, at 14:45-56.) The specification also notes that even more

sensors may be added. For example, a prescription container dimension sensor

may be used to determine whether the dimensions of the container to be stored

match the expected dimensions provided by the ADS control system. (A86, at

15:34-48.) In addition, sensors may be positioned on guide arms "to further sense"

if a container is contacting the guide arm. (*Id.* at 15:51-53.)

## SUMMARY OF ARGUMENT

This Court has repeatedly affirmed the grant of summary judgment for lack of written description based on facts that are materially indistinguishable from those here.  The specification of the '601 patent unambiguously limits the overall invention to a collating unit with sensors that automatically stores prescription containers.  The specification repeatedly describes "the present invention" as including sensors, including the critical role they play in automating storage of prescription containers within the collating unit.  Yet the asserted claims are broadly directed to a unit that does not require sensors.  Because the specification unambiguously limits the scope of the invention to a collating unit with sensors, the inventors were not in possession of a sensorless collating unit.  The district court therefore properly granted summary judgment that the asserted claims are invalid.

ScriptPro's brief is replete with arguments that it did not raise in the district court below and are therefore waived.  For example, ScriptPro in no way preserved its argument that the written description requirement does not apply to original claims.  Regardless, this argument was rejected by this Court sitting en banc in *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).  ScriptPro's reliance on *Crown Packaging Technologies, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373 (Fed. Cir. 2011), is similarly misplaced.

- 8 -

Consistent with this Court's ruling in *Ariad* that the written description requirement applies equally to original and amended claims, this Court in *Crown Packaging* merely applied the legal standard for adequacy of written description and held that the specification at issue in that case supported the claims.

The district court properly found that ScriptPro's arguments were insufficient to withstand summary judgment. It did not abuse its discretion in rejecting the conclusory and unhelpful report of ScriptPro's expert, Terry Faddis, as insufficient to create a genuine issue of material fact because he failed to adequately tie his opinions to support within the disclosure of the '601 patent.

## ARGUMENT

### I.   The District Court Properly Granted Summary Judgment That the Asserted Sensorless Claims are Invalid for Lack of Written Description

#### A.   Standard of Review

 "A district court's grant of summary judgment of invalidity for lack of written description is reviewed de novo." *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Although compliance with the written description requirement is a question of fact, this issue is amenable to summary judgment in cases where no reasonable fact

finder could return a verdict for the non-moving party." *Atl. Research Mktg. Sys.*, 659 F.3d at 1353 (quotation omitted).

## B.   Legal Standard for Lack of Written Description

Title 35 U.S.C. § 112, ¶ 1 requires the specification to "contain a written description of the invention."   Under this requirement, the specification "must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharms., Inc.*, 598 F.3d at 1351 (internal quotations and alterations omitted).   The test for sufficiency is whether the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.*  Possession is shown by describing the invention with all of its limitations using "such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).   "It has long been the case that a patentee 'can lawfully claim only what he has invented and described, and if he claims more his patent is void.'" *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 121 (1853)).

"The hallmark of written description is disclosure" and therefore the test requires "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc.*, 598 F.3d

at 1351. "A patent can be held invalid for failure to meet the written description requirement based solely on the face of the patent specification." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (reversing jury verdict of infringement where patent was invalid for lack of written description). "After all, it is in the patent specification where the written description requirement must be met." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (affirming summary judgment of invalidity for lack of written description).

C. **The Patent Claims, Which Do Not Require Sensors, are Broader Than the Supporting Disclosure, Which Unambiguously Limits the Invention to a Collating Unit with Sensors**

1. **This Court has Repeatedly Upheld the Grant of Summary Judgment Where Broad Claims Lacked Elements of the Invention Described in the Specification**

This Court has long held that broad claims that do not include elements of the specification's more narrow description of the invention are invalid for lack of written description. Patent claims "may be no broader than the supporting disclosure" and therefore a narrow disclosure limits claim breadth. *Gentry Gallery, Inc. v. Berkline Furniture Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998); *Carnegie Mellon Univ.*, 541 F.3d at 1127 (affirming summary judgment because "a broad claim is invalid for lack of written description when the entirety of the specification clearly indicates that the invention is of a much narrower scope"

(quotations and alterations omitted)). For example, *Gentry Gallery* involved claims directed to sectional sofas in which the location of recliner controls was not limited to the console. *Id.* at 1478. Yet the disclosure "unambiguously limited the location of the controls to the console." *Id.* at 1480. This Court therefore reversed the district court and held that claims in which the recliner controls were not located on the console were invalid. *Id.*

Similarly, in *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, certain claims were narrowly directed to a medical valve that included a spike, while other claims were more broadly directed to a valve that did not include a spike limitation—i.e., "spikeless." 558 F.3d at 1377. There, "the specification describe[d] only medical valves with spikes" and thus a person of ordinary skill in the art would not have understood the inventor to have invented a spikeless valve. *Id.* at 1378. This Court therefore affirmed summary judgment holding the spikeless claims invalid under the written description requirement. *Id.* at 1379.

This Court also affirmed the district court's summary judgment ruling that the asserted claims were invalid as lacking written description support in *Atlantic Research Marketing Systems*. The invention at issue in that case related to a handguard device that attached to a gun. *Id.* at 1351. Certain claims required that the device be supported only by the barrel nut of the gun and not the receiver sleeve of the gun. *Id.* at 1352. The specification, however, only disclosed a device

that was completely supported by the receiver sleeve or that was supported by both the receiver sleeve and the barrel nut of the gun.  *Id.* at 1354.  Because the subject claims covered a design in which the handguard device was supported only by the barrel nut attachment point (and hence did not require support by the receiver sleeve), the court affirmed summary judgment invalidating the claims for lack of written description support.  *Id.* at 1355.  The Court reasoned that these claims "exceed in scope the subject matter that inventor Mr. Swan chose to disclose to the public in the written description."  *Id.*; *see also LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1343-44 (Fed. Cir. 2005) (claim that was not limited to the seamless wavelet-based compression process disclosed in the specification was invalid for lack of written description); *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1069-76 (N.D. Iowa 2006) (finding claims broadly directed to a washing machine basket with grooves invalid where the specification described the invention as a washing machine basket with "tear-shaped" grooves), *aff'd*, 224 Fed. Appx. 972 (2007).

### 2.  The Specification Unambiguously Limits the Broadest Form of the Invention to a Collating Unit With Sensors

Similarly, the specification of the '601 patent unambiguously limits the broadest form of the invention to a collating unit for automatically storing prescription containers that includes sensors.  Where a patent "describes the features of the 'present invention' as a whole, this description limits the scope of

- 13 -

the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see, e.g.*, *Trading Techs. Int'l, Inc., v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010) (limiting scope of the invention based on specification's reference to "the present invention"); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006) (same).

Here, both the Summary of the Invention and the Detailed Description describe the "present invention" as a collating unit with sensors for automatically storing prescription containers. The Summary of the Invention states that "[t]he collating unit of **the present invention** broadly includes . . . a plurality of sensors." (A80, at 4:26-29 (emphasis added)). The Detailed Description notes that "[w]ith respect to the collating unit **10** of **the present invention**, the control system **28** communicates with and control operation of the . . . plurality of sensors **26**." (A83, at 10:57-61 (emphasis added)). Similarly, the Abstract states that "[t]he collating unit (10) broadly comprises . . . a plurality of sensors (26) to sense the presence of the containers within the collating unit (10)." (A69.)

Even ScriptPro notably concedes that sensors are part of the "broader invention." *ScriptPro Opening Br.* at 27 ("Thus, the inventors in these lists clearly intended to identify all of the components they had in mind for the broader invention . . . ."). Yet ScriptPro relies on *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121 (Fed. Cir. 2011), as ostensible support for the proposition that

sensors are optional because the specification states that the present invention "broadly comprises" sensors. "The term 'comprising,'" however, is well understood to mean 'including but not limited to,'" *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007), not optional. Contrary to ScriptPro's arguments, this Court in *Absolute Software* emphasized that the "present invention" language at issue in that case was optional, describing "[s]ome features that *can* be included in the *present invention*." 659 F.3d at 1137 (emphasis in original). This language stands in stark contrast to the non-optional "present invention" language of the '601 specification.

In addition to the "present invention" language in the '601 patent, the Summary of the Invention describes the critical role sensors play in transporting and storing each filled prescription container exiting the ADS. It states that the collating unit "stores prescription containers according to a storage algorithm that is dependent on . . . an availability of an open storage position in the collating unit." (A80, at 4:17-25.) Sensors play a necessary role in this storage algorithm. They determine the availability of open storage positions on the collating unit and relay this information to the control system each time a filled prescription container exits the ADS. (A81, at 5:52-55.) The Detailed Description further elaborates that sensors located at the closed and open ends of each holding area determine whether any containers are located within any of the holding areas of the

collating unit conveyor, then this information is relayed to the control system. (A84, at 11:65-12:3-11.)  If the sensors do not sense the presence of a container, the control system directs the container exiting the ADS to the first empty holding area on the collating unit conveyor.  (*Id.* at 12:11-14.)  After a first prescription container has been stored in a holding area, the control system determines if the next prescription container is for the same patient.  (*Id.* at 12:63-66.)  If the prescription container is for a different patient, sensors determine the next available holding area and that container is transported to that holding area.  (*Id.* at 12:66-13:6.)

If the next container is for the same patient, the control system instructs the sensor positioned proximate to the open end of the holding area housing that patient's containers to determine whether the holding area is empty.  (A81, A85, at 5:46-49, 14:11-20.)  If the sensors do not sense that the patient's containers have been removed, the sensors then determine whether the holding area is full and relay this information to the control system.  (*Id.* at 5:50-54, 13:29-40.)  If the holding area is full, the control system directs the prescription container to the first empty holding area based on information relayed from the sensors of the first available empty holding area.  (*Id.* at 5:56-59, 13:41-44.)  If the holding area is not full, the control system directs the prescription container to that holding area.  (*Id.* at 5:54-56, 13:44-47.)

In addition to determining *where* a container should be stored, the Summary of the Invention also explains that the sensors play a role in instructing the guide arms *when* to move containers from the infeed conveyor to a holding area on the collating unit conveyor. According to the Summary of the Invention:

> Based on the speed of the infeed conveyor and ***the sensor sensing the presence of the container***, the control system knows when the container is positioned at the opening of the holding area. Once the container is positioned at the opening of the holding area, the control instructs the guide arm to close, which pushes the container into the holding area and onto the collating unit conveyor.

(A81, at 5:64-6:4 (emphasis added).)

Thus, contrary to ScriptPro's contention, the '601 specification could not be more clear that sensors are critical to the invention. Indeed, one of the very stated purposes of the invention is the "need for a storage unit that ***automatically stores a prescription container*** containing medicaments and dispensed from an automatic dispensing system for subsequent retrieval by an operator." (A80, at 3:61-64 (emphasis added).) And the specification is literally replete with descriptions as to how sensors are critical for automatically storing containers in the collating unit's holding areas. The district court therefore correctly granted summary judgment that the asserted claims, which do not require sensors, are invalid for lack of written description support because the '601 specification limits the invention to a collating unit with sensors.

## II. ScriptPro's "Original Claims" Argument is Procedurally Improper and Violates Binding Precedent

In an attempt to circumvent the specification's teachings that sensors are a necessary part of the broadest form of the invention, ScriptPro posits that "the original versions of the asserted claims of the '601 Patent themselves provide written description support for the current versions of those same claims." *ScriptPro's Opening Br.* at 12. As explained below, ScriptPro waived this argument by failing to present it to the district court, and it is without merit in any event.

### A. ScriptPro Waived Any "Original Claims" Argument By Not Presenting It To The District Court

ScriptPro waived any "original claims" argument by not advancing it before the district court. This Court applies the law of the regional circuit to the procedural question of waiver. *Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003). In the Tenth Circuit "[a]n issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007). The Court "will not consider a new theory advanced for the first time as an appellate issue, even a theory that is related to the one that was presented to the district court." *Id.* Preservation requires an argument to be made with some degree of direct specificity. *See, e.g., Wall v. Astrue*, 561 F.3d 1048, 1066 (10th

Cir. 2009) ("perfunctory presentation" to district court resulted in waiver); *Ecclesiastes*, 497 F.3d at 1141 ("'vague and ambiguous' presentation of a theory" was insufficient); *Harrell v. United States*, 443 F.3d 1231, 1233 (10th Cir. 2006) (declining to address issue where appellants "did not develop any argument" on point in the district court).

ScriptPro never brought its "original claims" argument to the district court's attention in a way that sought a ruling on the issue. It failed to present any cogent argument, but rather merely remarked that "sensors are claimed in claims 7, 9, 13, 20, and 21. . . . This illustrates the inventors did not simply overlook sensors, but rather purposefully decided to omit the sensors from claims 1, 2, 4, and 8." (A3168.) These two sentences in no way advanced the argument that the original claims of the '601 patent provide sufficient written description support for the asserted claims. Nor did ScriptPro cite any of the case law it now cites ostensibly in support of its "original claims" argument. The district court did not misapprehend ScriptPro's argument, but instead expressly pointed out that neither party raised it. (A6, A8 nn.2 & 3.) ScriptPro did not preserve this issue for appeal.

**B.** **Even If the Court Were to Consider ScriptPro's "Original Claims" Argument, It is Without Merit**

But even if this Court were to consider ScriptPro's newfound argument, it is meritless. This Court sitting en banc in *Ariad Pharmaceuticals, Inc.* expressly rejected the very argument now lodged by ScriptPro. There, Ariad argued that the

written description requirement "does not apply to original claims because original claims, as part of the original disclosure, constitute their own written description of the invention." 598 F.3d at 1349. Synthesizing prior precedent on this issue, this Court "[o]nce again" rejected the original claims argument advanced by Ariad and held that "generic language in the application as filed does not automatically satisfy the written description requirement." *Id.* at 1350-51. This holding is binding precedent. ScriptPro's argument is therefore without merit.

The sole case ScriptPro relies on to support its "original claims" argument, *Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373 (Fed. Cir. 2011), in no way contravenes this clear precedent. *Crown Packaging* involved two patents for saving metal when seaming can bodies and can ends. *Id.* at 1375. There, the common specification identified and discussed two ways to save metal: (1) increasing the slope of the chuck wall, and (2) limiting the width of the reinforcing bead. *Id.* at 1375-76. This Court found sufficient written description support for claims directed to increasing metal usage solely by increasing the slope of the chuck wall. *Id.* at 1378-79. This Court reasoned that "the critical question is whether the specification, including the original claim language, demonstrates that the applicants had possession of an embodiment that improved metal usage by increasing the slope of the chuck wall without also limiting the width of the reinforcing bead." *Id.* at 1380. This Court explained that

"[n]owhere does the specification teach that metal savings can only be achieved by increasing the chuck wall angle along with narrowing the reinforcing bead." *Id.* Rather, a table in the specification showed "that even where the reinforcing bead's width [was] held constant, increasing the chuck wall's slope relative to vertical [brought] about a savings in the diameter of starting material." *Id.* at 1381. Consequently, "the specification support[ed] the asserted claims that achieve[d] metal savings by varying the slope of the chuck wall alone." *Id.*[2]

Notably, the Court in *Crown Packaging* distinguished the specification at issue from cases like *ICU Medical, Inc.* where "the specification unambiguously limited the scope of the invention." *Id.* at 1382-83. As in *ICU Medical*, here the specification of the '601 patent limits the scope of the invention. Specifically, as discussed above, the specification unambiguously limits the broadest form of the invention to a collating unit for automatically storing prescription containers that includes sensors. Nowhere does it describe the invention more broadly than a collating unit with sensors for automatically storing prescription containers.

---

[2] The Court in *Crown Packaging* cited *Ariad* for the proposition that original claims "in many cases will satisfy the written description requirement." 635 F.3d at 1380 (citing *Ariad Pharms.*, 598 F.3d at 1349). But the Court took this isolated statement out of context. In fact, the Court in *Ariad* stated that "[w]e disagree that this is always the case" and noted that "certain [original] claims may not" satisfy the written description requirement. 598 F.3d at 1349.

## III.   No Disputed Issues of Material Fact Preclude Summary Judgment

ScriptPro attempts to withstand summary judgment by arguing that sensors are not critical to the invention, but rather ScriptPro characterizes them as a redundant feature. *ScriptPro Opening Br.* at 9. Neither the '601 patent specification itself nor ScriptPro's expert Terry Faddis legitimately support this argument.

### A.   The Passages Of The '601 Patent Cited By ScriptPro Do Not Suggest That Sensors Are Merely Optional

ScriptPro relies on portions of the specification that describe sensors as a "security feature" and as being "instructed to confirm" the location of prescription containers. But ScriptPro disregards numerous other passages in the specification. Sensors are used first and foremost to determine where a container exiting the ADS will be stored on the collating unit, and this occurs before memory stores the location of the container, before the user retrieves it, and before the sensors determine whether that container is still located on the unit after alleged retrieval. (A80-A81, A84-A85, at 4:61-67, 5:46-59, 11:65-13:49.) The specification therefore does not teach that sensors are optional. Rather, it teaches that sensors are vital to storing prescription containers on the collating unit and that sensors are used as a security feature in addition to, and not instead of, being used to store containers.

- 22 -

The passages ScriptPro cites merely stand for the proposition that sensors also perform functions other than storing containers. They lend no support to ScriptPro's argument because they all involve sensors. For example:

> If the **sensors 26** determine that an object is located in the collating unit **10**, such information is transmitted to the control system **28** via the central sensor controller **102**, and the control system **28** instructs an error message to be displayed on the display **108**, as depicted in Box 7B. . . .
>       . . . The **sensor 26** positioned at the open end **80** of the holding area is then instructed to confirm that the container is located at the open end **80** of the holding area.

(A84, at 12:6-11, 12:28-30 (emphasis added).) Furthermore,

> As a security feature, after retrieval of the containers from the holding area **22**, the **sensors 26** associated with the holding area **22**, i.e. the **sensors 26** positioned at the open and closed ends **80, 82** of the holding area **22**, determine if any container is located in the area **22**. If a container is located in the holding area **22**, the control system **28** instructs an error message to be displayed on the display **108**.

(A85, at 14:32-39 (emphasis added).)

ScriptPro also maintains that certain descriptions of the preferred embodiments teach that memory can be substituted for sensors. In support, ScriptPro relies on a portion of the specification which states that the control system's memory stores the location of each container residing on the collating unit "[a]s containers are stored in the collating unit." *ScriptPro's Opening Br.* at 23 (citing A84, at 12:45-51).) But even this feature involves sensors. In particular, when a user inputs identifying information for a container that the user wants to

- 23 -

retrieve from the collating unit, the control system considers the container removed from the unit. (A85, at 14:27-33.) After this occurs, sensors are then used as a security feature to determine if in fact the user removed the container from the unit. (A85, at 14:33-38.)

### B.    Dr. Faddis's Opinions are Not Based on the Law and Contradict the Specification's Teachings

The expert opinion ScriptPro advances in an attempt to dispute that the asserted claims lack written description support does not apply the correct law and contradicts the specification's teachings. Contrary to ScriptPro's contention, although the district court noted that Dr. Faddis's expert report was unsworn, it nevertheless considered his written description opinions set forth in the report, finding them both conclusory and irrelevant. (A10-A11.)

Dr. Faddis's written description opinions are set forth in just two paragraphs of his report—paragraphs 26 and 27. In paragraph 26, he opines that the asserted claims satisfy the written description requirement because various individual claim limitations appear in the specification. But this has no bearing on whether the *combination* of claim elements comprising each asserted claim has written description support. "An applicant complies with the written description requirement by describing the invention, **with all its claimed limitations**." *Gentry Gallery, Inc.*, 134 F.3d at 1479 (internal quotations omitted; emphasis added). As one district court succinctly put it, "[i]n evaluating whether the written description

- 24 -

requirement has been satisfied, a court does not simply look to see whether the specification contains descriptions of the individual elements of the claim. Rather, a court must look to see whether there is a written description for the entirety of the claimed invention—i.e., the combination of elements." *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 822 F. Supp. 2d 1020, 1027 (N.D. Cal. 2011); *see Hyatt v. Dudas*, 492 F.3d 1365, 1371 (Fed. Cir. 2007) (upholding claim rejection for lack of written description where each claim limitation was individually described in the specification but the combination was not). Tellingly, Dr. Faddis fails to point to any portion of the specification describing the invention as the combination of claim limitations set forth in the asserted claims.

ScriptPro's reliance on paragraph 27 of Dr. Faddis's expert report is equally unavailing. Therein, he opines that that the asserted claims have written description support because it would have been obvious to a person of ordinary skill in the art that an operable collating unit could be made by using memory instead of sensors. *See ScriptPro's Opening Br.* at 25-26, 33-34. But this opinion has no bearing on the adequacy of written description because whether one of ordinary skill in the art could make an operable form of the claimed invention without sensors is an enablement argument. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1337 (Fed. Cir. 2005) (noting that in order to satisfy the enablement requirement "the specification must provide sufficient teaching such

that one skilled in the art could make and use the full scope of the invention without undue experimentation"). Moreover, the full scope of the asserted claims does not even include memory. Memory is merely one embodiment. (A84, at 11:6-11 (noting that the computing device "may" include memory). In addition, "a description that merely renders the invention obvious does not satisfy the [written description] requirement." *Ariad Pharms., Inc.*, 598 F.3d at 1552 (citing *Lockwood*, 107 F.3d at 1271-72). Indeed, "if the claimed invention does not appear in the specification . . . the claim . . . fails regardless whether one of skill in the art could make or use the claimed invention." *Id.* at 1348.

Dr. Faddis notably failed to point to any portion of the specification teaching that memory can be substituted for sensors. As such, whether it would have been obvious to one of ordinary skill in the art that an operable form of the asserted claims could be achieved by substituting memory for sensors is irrelevant to whether the claims have written description support. His opinions contradict both the teachings of the specification and the law on written description. These opinions are wholly irrelevant to whether the asserted claims are adequately supported by the specification and do not create a genuine issue of material fact. Because he failed to cite anything within the specification to actually support his opinion, the district court correctly characterized his opinions as conclusory, unhelpful, and insufficient to create a genuine issue of material fact to preclude

summary judgment. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1310 (Fed. Cir. 2008) (finding a conclusory expert declaration insufficient to create a genuine issue of material fact when the expert failed to cite any persuasive supporting references).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The specification of the '601 patent unambiguously limits the overall invention to a collating unit with sensors that automatically stores prescription containers. It also describes the critical role that sensors play in automatically storing containers. ScriptPro has not and cannot identify any portion of the specification that states otherwise. Moreover, Dr. Faddis's written description opinion contradicts the specification and the law on written description and, as such, does not create a genuine issue of material fact. Innovation therefore respectfully requests that this Court affirm the district court's order granting Innovation's motion for summary judgment that claims 1, 2, 4, and 8 of the '601 patent are invalid for lack of written description support as required by 35 U.S.C. § 112, ¶ 1 and award Innovation its appeal costs.

Dated: February 20, 2014

Respectfully Submitted,

/s/ Angel D. Mitchell

B. Trent Webb
Angel D. Mitchell
Chrissie Guastello
**Shook, Hardy & Bacon, LLP**
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Fax: (816) 421-5547

*Attorneys for Defendant-Appellee
Innovation Associates, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i). The brief contains 6,484 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). The brief was prepared using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: February 20, 2014       Respectfully submitted,

                         SHOOK, HARDY & BACON L.L.P.

                         By: _/s/ Angel D. Mitchell_____
                              Angel D. Mitchell

                              2555 Grand Boulevard
                              Kansas City, Missouri 64108-2613
                              Phone:  (816) 474-6550
                              Fax:  (816) 421-5547
                              e-mail: amitchell@shb.com

                              *Attorney for Defendant-Appellee*
                              *Innovation Associates, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | February 20, 2014 |
By:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means
  (by email or CM/ECF)

| Angel D. Mitchell |
Name of Counsel

| /s/ Angel D. Mitchell |
Signature of Counsel

Law Firm | Shook, Hardy & Bacon L.L.P. |

Address | 2555 Grand Boulevard |

City, State, Zip | Kansas City, Missouri 64108 |

Telephone Number | 816-474-6550 |

FAX Number | 816-421-5547 |

E-mail Address | amitchell@shb.com |